IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROBERT W. WESTFALL,**

    **Plaintiff,**

**v.**                                                                                                  **CIV No. 11-0437 LH-LFG**

**WILLIAMS PRODUCTION COMPANY, LLC,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

**THIS MATTER** comes before the Court on Plaintiff's Opposed Motion to Dismiss Certain Counts Without Prejudice or, Alternatively, Motion for Leave to Amend First Amended Complaint ("Motion to Dismiss")(Docket No. 56). The Court, having considered the relevant case law and arguments of counsel, concludes that the motion to dismiss shall be **granted** and that this case is hereby **dismissed without prejudice**.

**I.  Procedural Background**

Plaintiff Robert W. Westfall ("Westfall") filed his Complaint in the First Judicial District Court, Santa Fe County, New Mexico, on April 27, 2011, against Defendants ConocoPhillips Company ("ConocoPhillips") and Williams Production Company, LLC ("Williams"). On May 20, 2011, Williams removed this matter from state court to federal court (hereafter "Lawsuit I").

1

In the original Complaint[1], Westfall alleged that Defendants failed to pay interest on payments made to him pursuant to the New Mexico Oil and Gas Proceeds Payment Act; breached contracts with him by, among other things, failing to pay royalty on production from wells in which he has a royalty interest, failing to pay royalty on all hydrocarbons produced from the subject properties, and by making improper and illegal deductions from his royalty interest; failed to disclose the true price which Defendants received for his royalty hydrocarbons and the true costs of deductions, and by engaging in affiliate and non-arms-length transactions; committed constructive fraud on him by failing to fully and fairly disclose the true and complete relevant facts upon which royalty payments and calculations were made; breached the implied duty of good faith and fair dealing; and, lastly, converted the proceeds of the sale of hydrocarbons to their own use. JT. STATUS REP. AND PROV. DISC. PLAN (Docket No. 12 at 2). In this Complaint, Westfall sought a declaration of the rights and obligations of the parties, an accounting of all royalty transactions in the past, and injunctive relief as to future payment obligations, contending that Defendants are jointly and severally liable to him, and that he is entitled to compensatory and punitive damages. *(Id.)*.

Westfall filed an Unopposed Motion for Leave to File Amended Complaint, primarily for the purpose of enabling him to add an additional defendant, Phillips-San Juan Partners ("PSJP")(Docket No. 19). He subsequently filed his First Amended Complaint on August 18, 2011 (Docket No. 22). At this point in time, there were no other state or federal cases pending that involved the claims that Westfall had raised against these three Defendants in Lawsuit I (generally

---

[1] The full title of this pleading is "Complaint for Violation of the New Mexico Oil and Gas Proceeds Payment Act; Breach of Contract; Constructive Fraud; Breach of Implied Duty to Market; Breach of Implied Covenant of Good Faith and Fair Dealing; Conversion and for Declaratory Judgment, Accounting and Injunction and Jury Demand." (Docket No. 1-1).

described, between the parties, as the "marketability claims.")(Mot. Dismiss at 4).  Williams filed its Answer to the First Amended Complaint on September 6, 2011 (Docket No. 25), and filed its motion for summary judgment the next day (Docket No. 27).  On September 13, 2011, United States Magistrate Judge Garcia reassigned this case to a "Complex" Case Management Track, and imposed a December 12, 2011 deadline on Westfall for expert disclosure and reports.  (Docket No. 31).

On December 9, 2011, Westfall's attorney wrote a letter to opposing counsel, indicating the following:  that separate class action cases had been recently filed in state court against ConocoPhillips and Willaims[2]; that the complaints in these state court cases were amended to add Robert Westfall as a class representative; that in light of the expense of proceeding on these matters individually, and the availability of these other actions to litigate Westfall's claims of "marketability," "market condition," "affiliate transaction," and related claims, and in the interests of judicial economy, Westfall proposed dismissing Lawsuit I without prejudice, pursuant to Rule 41(a)(2). (Mot. Dismiss, Ex. B).  A week later, counsel for Williams responded to Westfall's December 9, 2011 letter, indicating that Williams would not agree to a dismissal of Lawsuit I without prejudice.  (*Id.*).

On December 28, 2011, Westfall filed the motion now before the Court, his Opposed Motion to Dismiss Certain Counts Without Prejudice or, Alternatively,  Motion for Leave to Amend First Amended Complaint (Docket No. 56).  In this motion, Westfall seeks to dismiss all claims against Williams without prejudice, and has attached a proposed Second Amended Complaint ("SAC")(Docket No. 56-1), omitting reference in the caption to Williams, as well as all claims of

---

[2] According to this letter, the captions of these state court cases are: *Anderson Living Trust, et al. v. Williams Production Company*, Case No. D-117CV2011-00511 (hereafter "Lawsuit II") and *Anderson Living Trust, et al. v. ConocoPhillips Company*, Case No. D-117CV2011-00510. Only the first of these cases is relevant to the analysis contained in this opinion.

liability against Williams in the text of the SAC.  In the alternative, Westfall seeks leave this SAC.  Westfall contends that the relief he seeks under both Rule 41(b)(2) and Rule 15(a) are functionally interchangeable under these circumstances, and that he is entitled to relief under both rules.

On January 10, 2012, Judge Garcia set a Rule 16 Settlement Conference for April 2, 2012 (Docket No. 59).  On January 11, 2012, Williams filed a statement regarding expert witness disclosure, indicating that it had not identified any experts in this case, because Westfall had not identified any experts within Judge Garcia's deadline for designation of expert witnesses, and consequently it was unnecessary for Williams to have any rebuttal experts lined up (Docket No. 61).

On January 12, 2012, Williams removed Lawsuit II to federal court.  This case is currently pending before United States District Judge James Browning.  *See Anderson Living Trust et al. v. Williams Production Co., LLC,* Case No. 12CV040 JB/LFG (D.N.M).

Westfall and two of the Defendants in Lawsuit I –  ConocoPhillips and PSJP – reached a settlement, and on February 2, 2012, a Notice of Settlement was filed with the Court (Docket No. 67).  Westfall filed a notice that briefing was complete on his motion to dismiss on March 26, 2012 (Docket No. 69).  A Stipulation of Dismissal as to ConocoPhillips and PSJP was filed on April 6, 2012.  This case is now pending against Defendant Williams only.  Thus, under either alternative sought by Westfall in his motion – if the Court grants the motion to dismiss all claims against Williams (the only remaining defendant who has not settled with Westfall), or grants the motion to amend the complaint – the result will be the same: no claims against Williams will remain in the litigation and the lawsuit will be dismissed without prejudice.

**II. Opposed Motion to Dismiss Certain Counts Without Prejudice or, Alternatively, Motion for Leave to Amend First Amended Complaint (Docket No. 56)**

    **A. Applicable Law**

As noted by the parties, dismissal of a plaintiff's action under Rule 41(a)(2) is not a matter of right – it is left to the Court's discretion. *See Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996). The critical issue is "whether the opposing party will suffer prejudice in the light of the valid interest of the parties." *Id.* (citation and internal quotation omitted). "Absent "legal prejudice" to the defendant, the district court normally should grant such a dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997), quoted in *Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005).

In the Tenth Circuit *Brown* case, the court discussed factors to be considered in making a prejudice evaluation:

> Prejudice does not arise simply because a second action has been or may be filed against the defendant, *Am. Nat'l Bank & Trust Co.*, 931 F.2d at 1412, which is often the whole point in dismissing a case without prejudice. Rather, prejudice is a function of other, practical factors including: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." *Ohlander*, 114 F.3d at 1537. These factors are neither exhaustive nor conclusive; the court should be sensitive to other considerations unique to the circumstances of each case. *Id.* And "[i]n reaching its conclusion, the district court should endeavor to insure substantial justice is accorded to both parties, and therefore the court must consider the equities not only facing the defendant, but also those facing the plaintiff." *County of Santa Fe v. Public Serv. Co.*, 311 F.3d 1031, 1048 (10th Cir. 2002)(quotation omitted).

*Brown v. Baeke*, 413 F.3d at 1124.

    **B. Plaintiff's Position**

Westfall's motion references Lawsuit II. (Mot. Dismiss at 3). That case involves four plaintiffs: (1) The Anderson Living Trust f/k/a The James H. Anderson Living Trust; (2) The

Pritchett Living Trust; (3) Cynthia W. Sadler; and, (4) Robert Westfall. One of Westfall's main arguments for dismissal is that, now that this multi-plaintiff case has been filed against Williams, Westfall should be permitted to pursue his "marketability" claims in that lawsuit (i.e., in Lawsuit II), rather than in this one, as one of several plaintiffs, rather than as an individual one. Westfall argues that at the time he filed his state court complaint in Lawsuit I, there were no state or federal cases pending which addressed the claims he raised against Williams, which he now seeks to dismiss without prejudice (generally described as the "marketability" issues). Because Lawsuit II has now been filed and is pending in federal court, Westfall seeks to be permitted to pursue these claims, which are also pursued against Williams by his fellow plaintiffs, in Lawsuit II, rather than individually in this case[3], citing reasons of judicial economy in addition to greater affordability to him as a plaintiff.

Westfall contends that because Williams will have to deal with the "marketability" claims in Lawsuit II, no legal prejudice will accrue to Williams by a dismissal without prejudice of the "marketability" issues in this lawsuit. In arguing a lack of prejudice to Williams, Westfall indicates that Williams has done no discovery, but acknowledges the summary judgment motion that Williams has filed in this Court on the marketability issues. Westfall argues that it is inevitable that the same motion for summary judgment will be filed again in Lawsuit II and that Williams will suffer no legal prejudice if this claim is dismissed without prejudice in Lawsuit I. Westfall contends that resolution of the marketability issue in one forum – that is, in Lawsuit II – would be more judicially economical. He also argues that, once Lawsuit II was filed in state court, it became apparent that he could join in it, and distribute the significant financial burden of litigating against

---

[3]According to Westfall, Lawsuit II involves claims that are "identical" to those that Westfall seeks to dismiss in his motion to dismiss in Lawsuit I. (Reply at 2).

major oil and gas companies among the plaintiffs, rather than undertaking that burden alone. One such expense is paying an expert witness on marketability issues.

### C. Defendant's Position

Williams opposes Westfall's motion in its entirety, asking the Court to deny it and to dismiss all claims *with* prejudice. Williams primarily argues that because it has filed a summary judgment motion – a dispositive motion – it will be unfairly prejudiced if Westfall's motion to dismiss is granted without prejudice. (Resp. at 3).

Williams argues that the "centerpiece" of Westfall's claim against Williams is based upon an alleged "duty to market" implied in the oil and gas lease. Williams states that, according to Westfall, regardless of the fact that the lease provides for payment of royalty "one eighth of market value of such gas at the mouth of the well" or "one-eighth of the proceeds of the sale" of the gas, this implied duty to market requires Williams to bear all of the post-productions costs incurred to deliver the gas to the point of sale, thereby preventing Williams from deducting a proportionate share of such expenses from Westfall's royalties. *(Id.* at 2-3). Williams argues that its summary judgment motion relies on holdings of the undersigned Judge and of the Tenth Circuit, [4] to the effect that this alleged duty *does not override* the language of the lease, and that lease language substantially identical to that in Westfall's lease expressly permits the deduction of post-production expenses. (*Id.* at 2). It is Williams's position that granting the summary judgment motion would result in dismissal of the "centerpiece" of Westfall's claims against Williams. Williams contends that dismissal of this action, without ruling in such a way on its motion for summary judgment,

---

[4] *See Elliott Indus. Ltd. P'ship v. Conoco, Inc.*, Case No. 00CV655 LH/WDS (D.N.M. Dec. 30, 2003), *aff'd*, 407 F.3d 1091 (10th Cir. 2005).

would be improper under Rule 41 because it would be unfairly prejudicial to Williams.

Additionally, in its response to the motion to dismiss, Williams mentions a failure by Westfall to "offer any expert opinion supporting his claims against Williams for royalty underpayment, notwithstanding the fact that expert testimony on the complex issues of gas marketing and royalty accounting is essential for him to prove his claims against Williams." (*Id.* at 3).

For these two reasons, Williams argues that it is entitled to judgment on the merits and thus would be unfairly prejudiced if this Court were to grant Westfall's motion to dismiss or to allow him to amend his complaint, either of which would effectively rid this Court of Westfall's claims in Lawsuit I against Williams without prejudice.

### D.  Legal Analysis

### 1.  Pending Motion for Summary Judgment

As noted above, Williams's motion for summary judgment seeks a legal ruling as to whether or not Williams is forbidden from deducting post-wellhead expenses from Westfall's royalty payments.  (*See* Williams Production Company, LLC's First Motion for Summary Judgment: Plaintiff's Claims Concerning Marketability (Docket No. 27)).  On March 5, 2012, a motion to dismiss, including this same legal issue, was filed in Lawsuit II.  (*See* Defendants' WPX Energy Production, LLC and WPX Energy Rocky Mountain, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint for Underpayment of Oil and Gas Royalties (Docket No. 18), *Anderson Living Trust et al. v. Williams Production Co., LLC,* Case No. 12CV040 JB/LFG (D.N.M)).

The motion for summary judgment in Lawsuit I involves evaluation of the issues raised therein *as a matter of law*, in light of the undisputed language contained in the applicable leases, a

characterization emphasized by Williams, particularly in its Reply Brief. The Reply Brief repeatedly states that this motion presents a "clear legal issue." (Docket No. 38 at 1). Williams criticizes Westfall for "labor[ing] to convert this straightforward legal issue into a supposedly complex factual inquiry that requires discovery." (Reply at 2). Williams notes that "[n]one of the factual disputes or avenues of discovery raised by Westfall, however, has anything to do with the 'marketable condition rule.'" (*Id*. at 3). Most vehemently Williams states:

> Try as he might, Westfall cannot recast a simple issue of law into a complicated question of fact. The parties agree that Williams deducts post-production expenses, and the only remaining question is a legal one, *i.e.*, whether New Mexico recognizes a 'marketable condition rule' that forbids these deductions regardless of their reasonableness. There is no disputed issue of material fact as to this legal question, and discovery on Westfall's 'marketable condition' allegations is unnecessary.

(*Id*. at 4).

In the interest of judicial economy, this "marketability" issue is now pending and can be resolved in Lawsuit II, a case involving four plaintiffs, including Westfall, and three defendants, including Williams. Westfall has expressed its preference for Lawsuit I to be dismissed so that legal issues can more efficiently be decided in Lawsuit II. While the Court agrees with Williams that generally a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice, in this instance, Westfall is not avoiding anything through dismissal of Lawsuit I, given pendency of identical claims in Lawsuit II. *See Phillips USA, Inc. v. Allflex USA, Inc*., 77 F.3d 354, 357 (10th Cir. 1996). The applicable law, Tenth Circuit precedent, applies equally in this other federal court action. A decision of these legal issues in Lawsuit II does not operate to unduly prejudice Williams.

Secondly, resolution of the marketability issue raised by the motion for summary judgment, on the issue of whether or not the implied duty overrides the language of the lease, is not dependent

on expert testimony.[5] Any failure by Westfall to timely designate an expert cannot be held against him on this strictly legal issue, by Williams's own admission, where discovery will not produce evidence relevant to the question of law. *See Building and Const. Dept. v. Rockwell Intern. Corp.*, 7 F.3d 1487, 1496 (10th Cir. 1993). Therefore, insofar as the merits of the summary judgment motion are concerned, Westfall's alleged failure to designate an expert within the timeframe set forth in this case by United States Magistrate Judge Garcia, is irrelevant. Williams is not in a better posture on the legal issues raised by summary judgment in Lawsuit I than he is with regard to these same issues that have been raised in Lawsuit II. Consequently, Williams would not be unduly prejudiced by dismissal without prejudice of Lawsuit I, despite the existence of a pending motion for summary judgment in Lawsuit I. The Court does not find that Williams will be unfairly prejudiced by having the marketability claims decided in Lawsuit II.

### 2. Expert Witness Report

Williams states that Westfall has failed to offer any expert opinion supporting his claims for royalty underpayment and that "expert testimony on the complex issues of gas marketing and royalty accounting is essential for [Westfall] to prove his claims against Williams." (Resp. at 3).[6] Implicit in Williams's argument is a request that this Court dismiss Lawsuit I with prejudice due to Westfall's failure to produce an expert report on or before December 12, 2011. Williams relies strictly on representations from counsel on this issue, and cites to the Court no legal precedent for such an extreme measure.

---

[5] The Court recognizes that the summary judgment motion was filed before Westfall's expert witness disclosure deadlines.

[6] As noted above, this lack of expert testimony is not relevant to the pending motion for summary judgment.

Westfall responds that prior to the December 12, 2011 deadline for designating an expert and submitting the expert's report, he wrote his December 9, 2011 letter to Williams. In this letter he indicated his intention to dismiss all claims against Williams in Lawsuit I, without prejudice, in order to avoid the expense, as an individual plaintiff, of paying a very expensive expert to prepare a report, when that cost could be shared among the plaintiffs in Lawsuit II. Westfall indicates that he had disclosed the identity of an expert witness on marketability issues, Dan Reineke, on August 30, 2011, but that it made no sense for him to pay this expert to prepare a report for use in Lawsuit I, given the pendency of Lawsuit II.

The Court is aware of the importance of compliance with deadlines for production of Rule 26 expert reports. FED.R.CIV.P. 26. Advance knowledge of an opponent's proof on a claim can be an invaluable aid in deciding whether to settle or litigate, and assist in preparing to meet the proof at trial. Ordinarily a party will not be permitted to use on direct examination any expert testimony not disclosed in compliance with pretrial orders. *See Sims v. Great American Life Ins. Co*., 469 F.3d 870, 894-95 (10th Cir. 2006).

The Court does not have adequate facts before it, however, on which to base a conclusion that exclusion of this expert testimony would be fatal to Westfall's case, should it go to trial. Williams makes such a representation through its counsel only, without legal authority and a thorough argument. This is an inadequate basis for this Court to dismiss Lawsuit I with prejudice. Furthermore, the basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissal based on procedural technicalities – especially in this instance when the Court would be relying solely on representations of counsel for Williams.

For these reasons, the Court concludes that, despite Westfall's failure to timely produce an expert report, dismissal of Lawsuit I without prejudice is reasonable, does not unfairly prejudice

11

Williams, and will lead to greater judicial economy.

### 3. Other Factors

Finally, Williams asks the Court to consider two other factors in this analysis of prejudice, without meaningful discussion of them. These factors are "excessive delay and lack of diligence on the part of the movant," and "insufficient explanation of the need for a dismissal." (Resp. at 3). Williams does not discuss specifically how these factors could be applied to Westfall. As noted above, any lack of diligence by Westfall in failing to conduct discovery in Lawsuit I, insofar as the pending motion for summary judgment is concerned, is irrelevant to the pending motion for summary judgment or furtherance of the case. There is no indication that Plaintiff unduly delayed or failed to diligently pursue this litigation. Some delay in the progress of this case has been because the Court has not acted on the two pending motions, and in large measure that was the Court knew that settlement negotiations were underway and was under the impression that there was a substantial likelihood of a complete settlement.

Secondly, the Court concludes that Westfall has, in fact, sufficiently explained the need for a dismissal of Lawsuit I, in view of the pendency of Lawsuit II, in terms of judicial economy to the Court and to the parties to have the litigation conducted in one forum.

### III. Conclusion

In evaluating prejudice to Williams, the Court has considered the factors as a whole. The application of these factors to the unique circumstances of this case does not lead the Court to the conclusion that Williams will suffer legal prejudice if this case is dismissed without prejudice. The same claims have been filed against Williams in another case in this federal court; a motion to

dismiss on similar grounds to those contained in the motion for summary judgment are pending.

The Court has considered the legal criteria governing this Rule 41(a)(2) motion to dismiss without prejudice. For the reasons stated, the motion shall be **granted**.

**WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Opposed Motion to Dismiss Certain Counts Without Prejudice or, Alternatively, Motion for Leave to Amend First Amended Complaint ("Motion to Dismiss")(Docket No. 56) is **granted** and that this matter shall be dismissed **without prejudice**.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**